UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Criminal Action No. 10-cr-00170-MSK

UNITED STATES OF AMERICA,

        Plaintiff,

v.

VICKI DILLARD CROWE,
a/k/a Vicki R. Dillard,

        Defendant.

---

**OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL
OR NEW TRIAL, AND DENYING MOTION FOR BAIL PENDING APPEAL**

---

**THIS MATTER** comes before the Court pursuant to Ms. Dillard's *pro se* Combined Motion for Judgment of Acquittal and, in the alternative, Motion for New Trial **(# 164,** as supplemented **# 171)**, the Government's response **(# 167)**, and Ms. Dillard's reply **(# 170)**, filed by her (new) counsel; and Ms. Dillard's *pro se* "Motion for Release of Defendant In Her Personal Recognizance" **(# 173)**, and the Government's response **(# 175)**.

On December 16, 2011, a jury convicted Ms. Dillard of eight counts of mail fraud under 18 U.S.C. § 1341, and eight counts of wire fraud under 18 U.S.C. § 3143, all stemming from a scheme by which Ms. Dillard would obtain mortgage loans based on false representations contained in the loan applications. On September 27, 2012, the Court sentenced Ms. Dillard to a term of 60 months' imprisonment, and upon the Government's request, immediately remanded her to the Bureau of Prisons.

In the period between her conviction and sentence, Ms. Dillard filed the instant *pro se* Motion for Judgment of Acquittal **(# 164)**. That motion, filed shortly after the Court granted Ms. Dillard's trial counsel's request to withdraw from her continued representation, contends that her trial counsel had provided her ineffective assistance, in violation of the 6th Amendment, in several respects. The Government filed a timely response, and Ms. Dillard, through newly-appointed counsel, filed a reply.

Immediately following her sentencing and remand, Ms. Dillard filed a *pro se* Motion for Release, which the Court interprets as a motion seeking release on bond pending appeal under 18 U.S.C. § 3143. The grounds stated in the motion are essentially the same as those stated in Ms. Dillard's Motion for Judgment of Acquittal.

**A. Motion for Judgment of Acquittal**

1. *Pro se* filing

Typically, the Court does not entertain *pro se* filings by a criminal defendant who is, at the time of filing, represented by counsel. The 6th Amendment to the United States Constitution guarantees a defendant the right to enjoy the assistance of counsel, or the right to forego such assistance and proceed *pro se*, but the Constitution does not create an interstitial right for a defendant to proceed through counsel for some matters and to represent herself *pro se* with regard to others. *U.S. v. Wright*, 370 Fed.Appx. 906, 908-09 (10th Cir. 2010) (unpublished), *citing U.S. v. McKinley*, 58 F.3d 1475, 1480 (10th Cir. 1995) ("a criminal defendant does not have a constitutional right to a hybrid form of representation"). Nevertheless, the Court may, in its discretion, elect to consider such motions. *Id.*, *citing U.S. v. Bennett*, 539 F.2d 45, 49 (10th Cir. 1976).

Ordinarily, the Court would refuse to consider *pro se* motions addressing substantive issues. *Compare U.S. v. Grose*, 26 Fed.Appx. 774, 775 (10th Cir. 2001) (unpublished) (court must consider *pro se* motions seeking withdrawal of present counsel and appointment of new counsel). However, the Court notes that although Ms. Dillard's Motion for Judgment of Acquittal was initially filed *pro se*, her appointed counsel filed a reply in support of that motion. Although counsel carefully worded that reply to avoid creating the impression that he was agreeing with any of Ms. Dillard's contentions,[1] he did not repudiate the motion or discourage the Court from considering it in part or whole. The Court will treat counsel's reply as effectively adopting the contentions in the *pro se* motion, and the Court will thus consider the motion.

Treating the *pro se* motion as one adopted by counsel, the Court must consider the question of whether counsel's implicit adoption of the motion alters the general requirement that the Court must liberally construe *pro se* filings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Theoretically, counsel's adoption of the motion without clarification or modification could be understood to indicate that counsel saw no errors or defects in the *pro se* submission that warranted correction. Nevertheless, out of an abundance of caution, the Court will afford Ms. Dillard's *pro se* motion the liberal construction contemplated by *Haines*.

    2. <u>Timing of allegations of ineffective assistance</u>

Next, the Court considers the question of whether it is appropriate for Ms. Dillard to challenge her trial counsel's effectiveness at this stage of the proceedings – *i.e.* either before sentencing or after sentencing but before any direct appeal can be heard. Typically, the preferred

---

[1]Counsel stated that he "will continue to discuss [the] matters [raised in the *pro se* motion] with Ms. Dillard in an effort to limit and clarify the issues she seeks to litigate," suggesting that counsel **did not** intend to adopt Ms. Dillard's *pro se* motion in its entirety.

avenue for bringing claims of ineffective assistance of counsel is by collateral attack under 28 U.S.C. § 2255. *U.S. v. Lopez-Medina,* 596 F.3d 716, 731 n. 8 (10th Cir. 2010). Ms. Dillard cites authority for the proposition that such claims can properly be raised prior to sentencing. *Citing U.S. v. Brown*, 623 F.3d 104, 113 (2d Cir. 2010). In *Brown*, the court addressed the question as a matter of first impression, but concluded that "when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding." *Id.* None of the concerns raised by the *Brown* court that might caution against pre-appeal consideration of such a contention – *e.g.* disruption of the proceedings to appoint new counsel or undue delay occasioned by taking evidence, *id.* – are present here. Accordingly, the Court entertains the motion at this time.²

In a footnote, the *Brown* court further noted that "the proper procedural avenue for defendants who wish to raise ineffective assistance claims after conviction but prior to sentencing is a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33." *Id.* at n. 5. Normally, such motions must be brought within 14 days of the entry of the verdict. Fed. R. Crim. P. 33(b)(2). Ms. Dillard's motion, filed almost six months after the verdict, is clearly untimely under this rule. Ms. Dillard's reply contends that "excusable neglect" justifies her untimeliness "because trial counsel could not be expected to file a motion for new trial alleging that he was constitutionally ineffective," and that Ms. Dillard filed the *pro se* motion within a few days of her trial counsel being permitted to withdraw. Without necessarily finding the

---

²The Court notes, however, that its Order here will necessarily have preclusive effect on any attempt by Ms. Dillard to raise ineffective assistance claims on the same matters in a future motion under 28 U.S.C. § 2255.

4

"excusable neglect" standard to be met in these circumstances, the Court will nevertheless treat the motion as timely and address it on its merits, as it finds no basis for relief in any event.

3. Merits

To establish that she received ineffective assistance of counsel at trial, Ms. Dillard must carry the burden of establishing both: (i) that her trial counsel's performance fell below an objective standard of reasonableness; and (ii) that she suffered prejudice as a result – that is "but for" counsel's ineffective performance, the result of the proceeding would likely have been different. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). As for the first prong, the Court must be highly deferential to the strategic decisions made by defense counsel, and there is a strong presumption that counsel's conduct was reasonable. *See id.* at 689-90. A defendant must do more that show that his attorney made a decision which was wrong. *See Hoxsie v. Kerby,* 108 F.3d 1239, 1246 (10th Cir. 1997). Instead, the decision must have been completely unreasonable and must bear no relationship to a possible defense strategy. *Id.* In assessing whether counsel acted reasonably, the Court cannot use hindsight; instead, it must assess the circumstances in existence at the time counsel acted. *Id.* As to the second prong, a Defendant is prejudiced when, but for his counsel's unprofessional errors, there is a "reasonable probability" that the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694. A "reasonable probability" is one which is "sufficient to undermine confidence in the outcome." *Id.*

Ms. Dillard's primary objection to her trial counsel's performance concerns counsel's decision to enter into a stipulation regarding the "use of interstate wires" element of the wire fraud claims. Ms. Dillard contends that, a few days before trial, her counsel showed her a copy

5

of a proposed stipulation to the effect that, on eight specified occasions, a specified amount was sent via interstate wires from the mortgage lender to a specified recipient, most often a title company or other closing representative.[3] Ms. Dillard states that her counsel advised her that "he and his 'team' were unable to prove any of the information listed therein." She contends that she registered an "adamant and unequivocal objection" to her counsel signing the stipulation. Nevertheless, her counsel agreed to the stipulation and, on the second day of trial, the stipulation was presented to the jury as Exhibit 28.

Ms. Dillard's motion does not offer any evidence to support the contention that her counsel's entering into a stipulation regarding certain elements of certain offenses is a material deviation from objective standards of professional reasonableness – *e.g.* she does not offer affidavits from qualified experts that such a practice is unreasonable behavior from a criminal defense attorney or point to other evidence defining the appropriate standards to be observed by defense counsel in such situations. Rather, she appears to contend that such conduct is *per se* unreasonable, and cites to certain cases in support.

There is authority for the proposition that a defense counsel's entry into a stipulation with the Government concerning facts establishing an element of the offense, over the defendant's objection, is **not** objectively unreasonable. In *Poole v. U.S.*, 832 F.2d 561, 563 (11th Cir. 1987), the court considered a defendant's argument that "any stipulation by a defense attorney that waives the government's burden of proving an element of the offense, and thus waives a

---

[3]Ms. Dillard's factual contentions are not supported by affidavit or other evidence, but the Court assumes that, if called upon, Ms. Dillard would attest to such facts under penalty of perjury pursuant to 28 U.S.C. § 1746. Thus, the Court will treat these facts as being adequately supported.

defendant's right to a jury trial on that element of the offense, regardless of the element, is not a strategic decision and cannot be waived by counsel alone," and rejected it, finding "this is clearly not the law." The court noted instances in which a defense attorney could and could not waive the defendant's rights without the defendant's consent, and conceded that "it is difficult to articulate a bright line distinction" between them. *Id.* at 564. But it concluded that the facts being stipulated to there – that certain banks were federally insured, thus establishing an element of the charges of bank robbery against the defendant – were such "trivial and easily proven matters" that "it is often wise for counsel" to stipulate to such facts (and indeed, that "courts have even encouraged such stipulations"). *Id.* Thus, it held that defense counsel "can stipulate to the insured status of the banks without a formal waiver by the defendant." *See also U.S. v. Potter*, 2009 WL 320605 (E.D.Pa. Feb. 6, 2009) (slip op.) ("Potter argues his counsel was ineffective for stipulating to the interstate commerce element of [Hobbs Act charges] without Potter's consent. This argument is without merit. . . . [D]eciding whether to stipulate to the interstate commerce element is not a 'fundamental' right" enjoyed by the defendant); *compare Allerdice v. Ryan*, 395 Fed.Appx. 449, 452 (9th Cir. 2010) (rejecting argument that trial counsel's entry into unspecified factual stipulations with government, over defendant's objection, constituted "the practical equivalent of a plea of guilty," as trial counsel "still vigorously contested the state's evidence, especially with respect to [defendant's] mental state") *with U.S. v. Riley*, 236 F.3d 982, 984 (8th Cir. 2001) (suggesting – without holding – that defense counsel's stipulation, over defendant's objection, that government witness would identify substance as cocaine implicated concerns that defendant "may not be treated as admitting to an element of an offense when he clearly and firmly expresses the desire to hold the government to its burden of

7

proof").

The cases Ms. Dillard cites are not as persuasive as *Poole*. In *Cox v. Hutto*, 589 F.2d 394, 395 (8th Cir. 1979), the defendant was convicted by a jury of burglary, thus triggering a jury-based sentencing inquiry into whether the defendant was a habitual offender. At that sentencing hearing, the defendant's trial counsel stipulated to four prior convictions of the defendant, without obtaining the defendant's consent to the stipulation. The trial court did not inquire as to the defendant's consent to the stipulation. (The defendant testified in subsequent *habeas* proceedings that he would have objected to the stipulation.) In finding such events to constitute "constitutional error" (apparently of the "due process and equal protection" variety, *id.*; the 6th Amendment's right to effective assistance of counsel is not mentioned in the decision), the Court of Appeals noted that the stipulation to the prior offenses was the "functional equivalent" of a plea of guilty to the habitual offender allegation, in that "nothing remains but to give judgment and determine the punishment." *Id.* at 396. *Cox* is distinguishable from the instant case (and cases like *Poole*) in several respects, most notably, that the stipulation relieved the government of **all** of its burden of proof on the extant charges, not simply its burden of proof on a single element. As cases like *Poole* and *Allerdice* suggest, concession of a minor element of the offense is not the "functional equivalent of a guilty plea" where, as indisputably happened here, trial counsel vigorously contested the more significant elements of the offense.

Ms. Dillard also relies upon *U.S. v. Muse*, 83 F.3d 672, 678-79 (4th Cir. 1996), a case that hurts, rather than helps, her argument. There, the defendant was charged with being a felon in possession of a firearm, and his counsel stipulated to facts sufficient to establish both his prior felony conviction and the fact that the firearm had traveled in interstate commerce. On direct

appeal, the defendant argued that the trial court had "erroneously instructed the jury" as to the effect of these stipulations on the government's burden and, alternatively, that the stipulations were the equivalent of a guilty plea such that the trial court should have conducted an examination into whether the defendant knowingly and voluntarily entered into them. The Court of Appeals extensively discussed the positive and negative effects that a factual stipulation to a specific element can have on a defendant (a discussion for which Ms. Dillard cites the case), eventually concluding that such a stipulation is "more potent than an admission but less draconian than a guilty plea." *Id.* at 680. In so finding, the court rejected the defendant's argument that such a stipulation amounted to a directed verdict or otherwise removed the element from the jury's consideration, such that an inquiry into the defendant's knowing and voluntary consent to the stipulation must be conducted. *Id.* at 681. It noted that the outcome might have been different "if Muse had stipulated to all the elements of the offense," but because "Muse stipulated to two of the elements, [and] vigorously contested the existence of the third, and most critical, element at trial," no inquiry into his knowing and voluntary consent to the stipulation was necessary. Although *Muse* does not arise in the ineffective assistance context, it persuasively demonstrates that a trial counsel's stipulation to certain elements of an offense – even a stipulation that may arguably be involuntary by the defendant herself – does not amount to error where trial counsel nevertheless contests other, more significant, elements of the offense, as Mr. Peppin did on Ms. Dillard's behalf here.

Other cases cited by Ms. Dillard are completely off-point. In *U.S. v. Clark*, 993 F.2d 402, 406 (4th Cir. 1993), the court considered whether the parties' stipulation to the fact that the defendant had "been previously convicted of a crime punishable by imprisonment for a term

exceeding one year" was sufficient to establish the requisite element of the crime of a felon in possession of a firearm under 18 U.S.C. § 922(g), or whether the government needed to also prove that the defendant's right to possess firearms had not subsequently been restored. Nothing in the case suggests that the defendant did not consent to the stipulation, nor that he was contending that his counsel had rendered ineffective assistance by so stipulating. Ms. Dillard also cites *U.S. v. Stephens*, 609 F.2d 230, 232-33 (5th Cir. 1980), a case in which the defendant expressly consented to his counsel entering into a stipulation admitting certain evidence, and thus, any language in *Stephens* suggesting an outcome that might occur in the absence of such consent is merely *dicta*.

Accordingly, the Court finds that there is no clear authority establishing that a trial counsel's decision to stipulate to a jurisdictional element like the use of interstate wires, over the defendant's objection, constitutes *per se* ineffective assistance; indeed, the most on-point authority appears to suggest just the opposite. In the absence of evidence that her trial counsel's entry into such a stipulation fell below an objective standard of reasonableness, Ms. Dillard fails to establish the first element of *Strickland*.

Assuming, however, that the first element of *Strickland* was established, the second is not. The second element requires Ms. Dillard to demonstrate that, but for her counsel's entry into that stipulation, there is a "reasonable probability" that the outcome of the proceeding might have been different. Here, the facts that Ms. Dillard's counsel stipulated to were that the transactions involved in the wire fraud counts[4] made use of interstate wires. To show that her

---

[4]The Court notes that Ms. Dillard's argument relating to the stipulation, even if meritorious, would have no bearing on the mail fraud counts on which she was also convicted.

counsel's entry into such a stipulation prejudiced her defense, Ms. Dillard must therefore show that she had evidence to the contrary – *i.e.* that the transactions **did not** make use of interstate wires (or, at the very minimum, that the Government did not have the ability to prove the use of interstate wires). Ms. Dillard has not come forward with any evidence on this point.[5] She supposes that "the very existence of the stipulation [is] indicative of the fact that the government lacked evidence to convict [her]," but even assuming this statement recites Ms. Dillard's speculation that the Government could not actually marshal evidence to establish the use of interstate wires element, it is nothing more than just that – speculation. Such speculation is especially ill-founded given the trivial burdens required in order to prove the element. As cases like *Poole* note, elements existing solely to provide for federal jurisdiction – there, a bank's federally-insured status; here, the use of interstate wires at some point in the scheme – are matters on which the Government's proof is readily attainable and not readily susceptible to challenge, leading many defendants to routinely stipulate to their sufficiency. Indeed, notwithstanding the stipulation, the Government here presented some evidence of wire transactions relating to the scheme: the Government introduced Exhibit 278, a wire transfer confirmation that is the subject of paragraph 2 of the stipulation, demonstrating the wiring of funds from New York to the closing agent; and Exhibit 279, a wire transfer confirmation relating

---

[5]Ms. Dillard relies heavily on her counsel's alleged statement that he could not "prove" the allegations in the stipulation. The meaning of this alleged statement is somewhat unclear (it seems more likely that Mr. Peppin was advising Ms. Dillard that he could not **dis**prove the use of interstate wires, and that Ms. Dillard simply misunderstood his statement), but it is ultimately irrelevant. Ms. Dillard's burden on the prejudice prong is not to show that **her counsel** was unable to prove the allegations, but to show either that the **Government** would not have been able to prove them or that her counsel had the ability to **disprove** them. She has demonstrated neither.

11

to the property at issue in paragraph 3 of the stipulation, reflecting the transfer of funds from New York to the closing agent.

Accordingly, the Court finds that even if Ms. Dillard could demonstrate that her counsel's performance fell below the standard of reasonableness as a result to his stipulation to the use of interstate wires element, she has nevertheless failed to show any prejudice to her that resulted from such ineffective performance.

Ms. Dillard makes several other highly generalized allegations of ineffective assistance by her trial counsel, but none warrant extended discussion. She contends that, post-conviction, Mr. Peppin failed to verify certain information relating to the identities of victims and the amount of loss. However, Mr. Peppin did not represent her at the time of sentencing, making it impossible to show that any ineffectiveness by him prejudiced her in sentencing. She contends that Mr. Peppin failed to call any experts in her defense, after promising that he would, but she fails to identify what facts any such experts would have testified to nor shown how the absence of such testimony affected the result of the trial. She contends that her counsel "did not call other witnesses who would have debunked and completely discredited the Government's claims," offering as one example her ex-husband Jamaica Crowe. But the record reflects that Mr. Crowe was a sometime co-conspirator with Ms. Dillard on several of the transactions at issue, and thus, any favorable testimony Mr. Crowe might have offered would necessarily subject to concerns as to how the jury might assess his credibility. As such, Ms. Dillard's trial counsel's decision not to call Mr. Crowe in her defense is clearly a strategic decision that cannot amount to ineffectiveness. Ms. Dillard also offers a litany of additional alleged errors by her trial counsel in the form of a list, without any meaningful development of the allegations therein.

This is insufficient to carry her burden of showing ineffective assistance.

In a supplement to her motion, Ms. Dillard levels additional allegations of ineffective assistance at Mr. Lewis, the counsel appointed to represent her for sentencing purposes. The crux of this "supplement" appears to be a complaint that her current counsel disagrees with the merits of her Motion for Judgment of Acquittal and encouraged her to withdraw it in order to better demonstrate her acceptance of responsibility at sentencing. Putting aside a wealth of other potential grounds for rejecting this argument, and given that the Court essentially agrees with Mr. Lewis that her *pro se* motion lacks merit, the Court can hardly say that his advising her of that fact constitutes ineffective assistance.

Because the Court finds that Ms. Dillard did not receive ineffective assistance of counsel at trial, her Motion for Judgment of Acquittal or a New Trial is denied.

**B. Motion for bond**

The Court understands Ms. Dillard's remaining motion to seek release on bond pending appeal pursuant to 18 U.S.C. § 3143. Assuming – without necessarily finding – that the Court has jurisdiction to consider the motion (as no Notice of Appeal has yet been filed), the Court would nevertheless find the motion to be without merit. Under 18 U.S.C. § 3143(a)(2), Ms. Dillard, having now been sentenced, is presumptively required to be detained pending any appeal, and the burden is on Ms. Dillard to show either that "there is a substantial likelihood that a motion for acquittal or new trial will be granted" or that clear and convincing evidence demonstrates that she is not likely to flee or pose a danger to the community while an appeal proceeds.

As to the former requirement – the likelihood that a motion for judgment of acquittal or

new trial will be granted – Ms. Dillard relies on the motion discussed above. Because the Court has now rejected the contentions in that motion, and Ms. Dillard has not identified any other potentially meritorious grounds for seeking a judgment of acquittal or a new trial, she has not carried her burden under 18 U.S.C. § 3143(a)(2)(A)(i). As to the likelihood that Ms. Dillard will pose a danger to the community, the Court made explicit findings on that point when granting the Government's motion for an immediate remand of Ms. Dillard to the custody of the Bureau of Prisons, and Ms. Dillard's motion for bail does not address, much less refute, any of those findings.

Accordingly, Ms. Dillard's *pro se* Combined Motion for Judgment of Acquittal and, in the alternative, Motion for New Trial **(# 164,** as supplemented **# 171)** is **DENIED**, and her *pro se* "Motion for Release of Defendant In Her Personal Recognizance" **(# 173)** is **DENIED**.

Dated this 10th day of October, 2012

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge